# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SABEEL C. EL-BEY,

                    Plaintiff,

        v.

VILLAGE OF SOUTH HOLLAND, *et al.*,

                    Defendants.

Case No. 11 C 4949

Hon. Harry D. Leinenweber

MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Dismiss. For the following reason, the motions are granted in their entirety and the Complaint is dismissed with prejudice.

## I. BACKGROUND

Plaintiff Sabeel El-Bey ("El-Bey") sued the Village of South Holland and various other parties after police from that village and others arrested and forcibly removed him from a residence at 84 S. Woodlawn Drive in South Holland on August 31, 2010. The suit also alleges liability for the earlier towing from the home of a 2006 Volkswagen Passat on August 22, 2010.

El-Bey claims the residence was his home and that he has a deed to prove it. Defendants say El-Bey's "deed" is a phony piece of paperwork conveying title from the "Moorish Science Temple," which was never in the actual chain of title. This, Defendants say, is part of a trend of dozens of phony deeds, all invoking the

name of the temple.  *See* Anjelica Tan and Susan Chandler, *Think You Own Your House? Check the Deed*, New York Times, August 27, 2011, *available at http://www.nytimes.com/2011/08/28/us/28cncmortgage. html?_r=1&pagewanted-all*.

At the time of El-Bey's arrest, the property was owned by one Adolph Clark ("Clark").  Although foreclosure proceedings were pending against Clark, no foreclosure order had been entered and he was still the legal owner, Defendants say.

According to police reports El-Bey attached to his Complaint, on August 22, 2010, a co-occupant of the home, Felicia Muhammed ("Muhammed"), and one Julian Nettles ("Nettles") were arrested for criminal trespass to the home, at which time the Volkswagen was apparently seized and removed from the home's garage.

The car was towed by Cars Collision Center, LLC ("Cars"), whose manager is Defendant Tony Kulcyzk ("Kulcyzk").  Cars apparently has a contract to tow cars for South Holland.  El-Bey first claims that Kulcyzk towed the car (Second Am. Compl. 9) and then claims an unknown driver of tow truck #63 towed it.  *Id.* at 10.  Sometime after the car's seizure, but before his arrest, El-Bey alleges he tried to retrieve the car by talking to South Holland Sergeant R. Goode, Sergeant Gregory Baker, and Lieutenant Dave Pedric, none of whom returned his car.

El-Bey claims that when he finally did get the car back at an unspecified date, he had to pay $1,455 to retrieve it, and several

items were missing, including a camera, valuable coins and a cell phone.

On August 31, 2010, El-Bey had a court date in Cook County Circuit for a lawsuit he filed against South Holland, apparently seeking a Temporary Restraining Order ("TRO") directing the return of his car. Pl.'s Compl., Exs. A & A2; ECF 91, PageID 447, 453. South Holland Attorney and current Defendant Charles Lapp ("Lapp") successfully represented the village at that hearing, and the TRO was denied. El-Bey accuses Lapp of mail fraud, apparently for mailing documents related to that hearing.

Unsuccessful, he proceeded to the South Holland Police station demanding to speak with the Police Chief but was told he was unavailable. It is not clear if El-Bey spoke with other police administrators at that time or at an earlier time, but in any event, was told in no uncertain terms by South Holland police that Cook County Recorder of Deed records indicated he was not the lawful owner of the property. ECF 91, PageID 447.

El-Bey left the police station wearing tan clothing and a black baseball cap. A short time later, police, received a complaint from neighbors of the residence that a man fitting El-Bey's description and another person had entered the home. Police called El-Bey on his cell phone. According to the police report, El-Bey cursed them and hung up. Police also called Clark, the rightful owner of the home, to assure themselves that he had not

- 3 -

Case: 1:11-cv-08022 Document #: 42-1 Filed: 05/22/12 Page 5 of 23 PageID #:414

given anyone permission to enter.  According to police, Clark responded that he had not, and he gave police permission to enter and secure the premises.  South Holland police called Riverdale and Dolton police for backup and then forced open the door and arrested El-Bey and Muhammed (this being Muhammed's second arrest at the premises).

Although El-Bey alleges generally there was no probable cause to arrest him, he attached the police reports to his Complaint and never specifically takes issue with the details in them, including that he was told the home was not his.  In fact, his Complaint correlates with many details in the reports, including the fact that his arrest took place after a morning court appearance, that he had multiple meetings with South Holland police in the days before his arrest, and the fact that the South Holland police chief did not meet with him.

El-Bey alleges the following conduct during and after the arrest.  During the arrest, the following police officers pointed guns at him:  South Holland police chief Warren Millsaps ("Millsaps"), South Holland supervising police officer Robert Stegenga ("Stegenga"), South Holland supervising police officer Gregory Baker ("Baker"), South Holland supervising police officer P. Williams, South Holland police officer M. Roberts, an unknown Riverdale police officer and an unknown Dolton police officer.

The same unknown Dolton police officer then handcuffed him. Unspecified persons then lifted him by the handcuffs, causing pain in his wrists. Police then searched the house. Baker asked him for the keys to the house and a car (a different car from the subject of this suit) on the premises. South Holland police officer Borowski ("Borowski") seized unspecified personal property and removed it from the residence without a warrant or court order. El-Bey was left in a police car on an 85-degree day for more than 10 minutes "without proper air ventilation."

At the South Holland police station, when El-Bey asked to see a doctor for his wrists, an unknown South Holland officer told him he was lucky – that if the officer had been at the arrest site, he would have put a bullet in El-Bey's head.

El-Bey was then questioned by the FBI, allegedly called by police because El-Bey had terrorism and homeland security textbooks in the closet of the residence. The FBI apparently found El-Bey harmless, and he was then taken to St. James Hospital where he received an X-ray, was given medication "for swelling and pain," and returned to jail.

El-Bey was charged with criminal trespass, but the charges were eventually dropped. After the trespassing arrest, police boarded up the home to prevent El-Bey from returning. He alleges this also kept him from retrieving his personal items in the home.

El-Bey met with South Holland Mayor Don DeGraff on September 14, 2010 about being locked out of his "home," and to inquire why local police were "acting as Cook County Sheriffs" (apparently a reference to his removal from the home). The residence is part of the Preserves of South Holland Home Owner's Association (the "Preserves"), which is also a named Defendant. Also named as a Defendant is an Allegra Smith ("Smith"), who appears to be affiliated with Preserves, although El-Bey's Complaint does not say how. Smith, El-Bey charges, met with Mayor DeGraff "to discuss how they were going to continue to deprive Plaintiff from accessing his clothes, shoes and his other personal property." Second Am. Compl. 10. Smith, at an unspecified time, demanded association fees from El-Bey and threatened to call police every time she saw El-Bey's car until he paid the fees.

El-Bey alleges the following counts.

| Count | Claimed Cause of Action | Defendant |
|---|---|---|
| I-III | 42 U.S.C. 1983 § Monell claim | Villages of South Holland, Dolton & Riverdale |
| IV | Appears to be excessive force and unreasonable search and seizure claims under §§ 1983, 1985 | Millsaps, Stengenga, Baker, Goode, Pedric, Williams, Roberts, Burke, Borowski, unknown Riverdale officer & unknown Dolton officer |
| V | False arrest and imprisonment | Village of S. Holland, Millsaps, Stegenga, Baker, Good, Williams, Burke, Roberts, Borowski & Pedric |

| Count | Claimed Cause of Action | Defendant |
|---|---|---|
| VI | False arrest, possibly unreasonable search and seizure | Village of Dolton |
| VII | "Indemnification" | Village of S. Holland (alleging liability for payments for judgments against Millsaps, Stegenga, Baker, Williams, Roberts, Burke & Borowski) |
| VIII | "Indemnification" | Village of Dolton (alleging liability for payments for judgments against unknown Dolton officer) |
| IX | "Indemnification" | Village of Riverdale (alleging liability for payments for judgments against unknown Riverdale officer) |
| X | 42 U.S.C. §§ 1983, 1985 conspiracy count | Millsaps, Baker, Williams, Roberts, Burke, Borowski & unknown officers |
| XI | 42 U.S.C. §§ 1983, 1985 conspiracy count | DeGraff, Lapp, & Smith |
| XII | 42 U.S.C. §§ 1983, 1985 conspiracy count | DeGraff, Cars, Lapp, & Kulcyzk |
| XIII | 42 U.S.C. §§ 1983, 1985 conspiracy count | Smith, Village of South Holland & DeGraff |
| XIV | 18 U.S.C. § 1951(a) Racketeering count | Cars, Kulcyzk, South Holland & DeGraff |
| XV | 42 U.S.C. §§ 1983, 1985 "Fourth Amendment" | Kulcyzk & unknown driver of tow truck #63 |
| XV No. 2 (erroneously labeled "XV") | 42 U.S.C. §§ 1983, 1985 "Malicious Prosecution" | Village of S. Holland, S. Holland P.D., Millsaps, Baker, Lapp, Smith |
| XVI | State law battery | Villages of S. Holland, Dolton & Riverdale, Millsaps, Steganga, Baker, Williams, Roberts & unknown Dolton officer |

- 7 -

All Defendants have filed Motions to Dismiss under Federal
Rule of Civil Procedure 12(b)(6). Some Defendants additionally
move for dismissal under Rule 8's plausibility standards, and Cars
moves for dismissal under Rule 12(b)(5).

## II. __LEGAL STANDARD__

When evaluating dismissal under Rule 12(b)(6), the Court takes
all well-pleaded allegations of the complaint as true and views
them in the light most favorable to the plaintiff. *Appert v.
Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, ---, 2012 U.S. App.
LEXIS 4834, at *29 (7th Cir. 2012). To satisfy the notice-pleading
standard of Rule 8, a complaint must provide a "short and plain
statement of the claim showing that the pleader is entitled to
relief, and is sufficient to provide the defendant with fair notice
of the claim and its basis." *Id.* A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged. *Id.* at *30. Determining whether a complaint
states a plausible claim is context-specific, requiring the
reviewing court to draw on its experience and common sense.
*Ashcroft v. Iqbal*, 556 U.S. 662, 663-664 (2009).

## III. __ANALYSIS__

El-Bey alleges four basic constitutional violations: illegal
search of his "home," illegal seizure of his car and some personal

items, excessive force used in his arrest and Due Process
violations.

## A.  42 U.S.C. § 1985

As preliminary matter, alleging a claim under § 1985 requires
an allegation of race-based animus.  *Turner v. Jackson Park
Hospital*, 264 Fed.Appx. 527, 530 (7th Cir. 2008).  Nowhere in his
Complaint does El-Bey allege race motivated any of the actions
involved.  Therefore, to the extent any of the counts allege a
violation of § 1985, they fail.

## B.  Illegal Search

In order for a search to violate the Fourth Amendment, the
party searched must have a *legitimate* expectation of privacy in the
premises or object searched.  A legitimate expectation of privacy
is a subjective expectation of privacy that society is prepared to
consider reasonable.  *United States v. Curlin*, 638 F.3d 562, 565
(7th Cir. 2011).  Where an occupant has no lawful right to be in
the residence he is occupying, society does not consider the
occupant's subjective expectation of privacy reasonable.  *Id.*
("[I]ndividuals who occupy a piece of property unlawfully have no
claim under the Fourth Amendment"; citing several cases where
squatters and illegal occupants had no legitimate expectation of
privacy).

El-Bey's own filings demonstrate that he had no legitimate
expectation of privacy in the premises.  El-Bey attached to his

Complaint a title insurance company's report, dated August 26, 2010, five days before his arrest.  Paragraph 13 of that report noted "Moorish Science Temple of America, Inc., having no apparent interest in the land conveyed said premises to El-Bey as trustee." Pl.'s Resp. to South Holland, Ex. B-2; ECF 110, PageID No. 663. The report goes on to state that "Former interest, if any, of Moorish Science Temple of America, Inc., should be explained."  The report also unambiguously states that "Title to the estate or interest in the land is at the effective date vested in:  Adolph Clark."  El-Bey nowhere attacks the report.

This, coupled with the admonishment from police that El-Bey received before the arrest (which El-Bey does not allege was never delivered), clearly demonstrates that El-Bey could not have had a legitimate expectation of privacy in the home.

Once inside the home, it was not unreasonable for police to search the home for their own safety and for further evidence of the crime of trespassing.  Moreover, police had permission from the true owner to secure the premises, and searching the home in order to secure it and ascertain that there was nothing inside that might pose a danger to the officers or the property itself was reasonable.  Thus, there was no unreasonable or illegal search of the premises.

## C. Illegal Seizure

There are several seizures at issue here: the seizure of El-Bey (the alleged false arrest); the seizure of the car and the items within it, and the seizure of El-Bey's personal items from the home, including books on homeland security and terrorism.

To prevail on a claim for false arrest, a plaintiff must show that the arresting officer lacked probable cause to make the arrest. *Gonzalez v. Vill. Of W. Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012). Clearly, probable cause is not an issue here. The police report El-Bey attached demonstrates that police were called to investigate a report from an eyewitness of trespassing. The caller was credible, describing the trespasser's clothing, and police had already been called previously to the home, further bolstering the report's credibility. Police called the owner (Clark) and confirmed he had not given anyone permission to enter. This demonstrates probable cause for the arrest.

As to the seizure of the car and belongings, El-Bey has not alleged that when the car was seized (August 22, 2010), police did not hold the same reasonable belief and probable cause that they held on August 31, 2010 when he was arrested: that anyone on the premises was trespassing. On that day, police arrested Muhammed and Nettles for trespassing. As such, seizure of evidence on the premises was *per se* evidence of trespassing, because to be placed on the property, someone would have had to have trespassed to put

it there. *See Perlman v. Chicago*, 801 F.2d 262, 267 (7th Cir. 1986) (noting "the seizure of an item in plain view is reasonable if there is probable cause to associate the property with criminal activity . . . [or] evidence of a crime" and finding an officer's seizure of hundreds of items of jewelry pursuant to a warrant proper because the officer could not tell which items were stolen and which were not) (internal citations and punctuation omitted). As such, the items taken by police here were evidence properly seized.

Alternatively, the seizure and tow of the vehicle and the removal of items from the home, when they were on private property belonging to another, was reasonable, particularly since El-Bey does not allege the car and items were there with the permission of Clark. *See Marzec v. Crestwood*, No. 90-3595, 1991 U.S. App. LEXIS, at *3 (7th Cir. 1991) (finding no § 1983 violation for city's removal of vehicles from private property that were there without the permission of landowner).

Where an initial seizure of a vehicle and items are reasonable, the continued detention of that vehicle until an owner or interested party pays towing and storage fees does not constitute a separate Fourth Amendment issue. *Lee v. City of Chicago*, 330 F.3d 456, 465 (7th Cir. 2003). *Lee* indicates, however, it may be a Due Process issue, which will be discussed shortly.

As to the items that were in the car that El-Bey says are now missing, since the initial seizure of the car was proper, the items it contained were properly seized as well, and there are no Fourth Amendment issues.

### D.  Due Process

While there is no Fourth Amendment violation for retention of personal property lawfully taken, *Lee* indicates it may be a Due Process violation under the Fourteenth Amendment.  Although it is not at all clear that is what El-Bey is alleging, he does cite the Fourteenth Amendment and, construing *pro se* complaints liberally, as the Court must, this allegation will be examined.

El-Bey has alleged his personal property was removed from the home and never returned to him.  The only property El-Bey references in the Complaint are the textbooks taken by police, the car, and the missing items within the car.  There are some additional items listed in the police report El-Bey attached.  He also mentions numerous items that were left in the house that he is unable to retrieve.

The Supreme Court has recognized that the negligent loss of property by state officials does not present a cognizable § 1983 due process claim when state tort remedies provide adequate relief for the deprivation.  *Guenther v. Holmgreen*, 738 F.2d 879, 882 (7th Cir. 1984).  This concept has been extended to "an unauthorized *intentional* deprivation of property by a state employee." *Hanno v.*

*Sheahan*, No. 01 C 4677, 2004 U.S. Dist. LEXIS 23688, at *35 (N.D. Ill. Nov. 29, 2004) (dismissing § 1983 claim for alleged theft of property by officers during an eviction)(emphasis added).

As *Hanno* noted, Illinois residents have replevin actions available to them and El-Bey has not suggested that this remedy is inadequate.

Furthermore, El-Bey has pleaded that just before his arrest, he was in court, receiving Due Process, in an attempt to retrieve his car. Clearly, there are state court proceedings available to him, and the § 1983 claim cannot stand.

### E. Excessive Force

Excessive force claims are analyzed under the Fourth Amendment and its "reasonableness" standard. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011). The reasonableness of the force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.*

El-Bey has alleged excessive force in the form of several guns being pointed at him, threats of bodily harm if he did not lie on the ground, inadequate ventilation of the squad car, and pain inflicted on his wrists when he was lifted while handcuffed.

The Court cannot say that the alleged degree of force was unreasonable. Police were called to a home that was the site at least one prior trespassing call. They had just encountered El-Bey at the police station and had previously informed him he had no

- 14 -

right to be at the home, but he disregarded their instructions and went anyway.  Further, he had ignored their additional overtures delivered by phone, swearing at them.  He refused to even answer the phone again.

When police are forced to enter a home, they face additional dangers not present elsewhere.  *See U.S. v. Norris*, 640 F.3d 295, 303 (noting entry into a home poses potential access to weapons and the danger of ambush in a confined setting of unknown configuration to officers).

Breaking down the door after being refused entry and proceeding with guns drawn was therefore reasonable.  So too was ordering El-Bey to the ground and handcuffing him.  Perhaps the officers could have been a little more gentle in picking him off the ground, but El-Bey does not allege the officers intentionally tried to injure him, or that he was permanently injured – only that he suffered some swelling.  Similarly, he does not allege that the temperature in the car was anything but uncomfortable or that police did it deliberately.  He does allege an officer insulted him when he complained of his pain, but words are not force, and police did heed his second complaint by taking him to a hospital to have his wrists checked out.

On balance, the Court cannot say the force alleged would be clearly unreasonable from the perspective of a police officer.  *See Sow*, 636 F.3d at 303-304 (finding tight handcuffs not excessive

force when they were removed after 25 minutes and second complaint of pain; also finding the keeping of arrestee outside in cold temperature not excessive force; also finding the bumping of arrestee's head on police car doorframe as he was placed into custody not excessive force).

### F.  Qualified Immunity

Alternatively, the police and village officials are entitled to qualified immunity here.

Two questions are pertinent to the defense of qualified immunity:  whether the alleged facts show that the state actor violated a constitutional right, and whether that right was clearly established at the time of the alleged violation. *Brown v. City of Fort Wayne*, 752 F.Supp.2d 925, 940 (N.D. Ind. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

El-Bey offers no argument against the qualified immunity defense raised in the motions to dismiss.  He also offers no cases showing that police should have known they were violating a clearly established right by responding to a call of trespassing with guns drawn, or that officers would clearly know the amount of force involved in handcuffing someone and picking them up was excessive. He also offers no cases suggesting officers and village officials would conclusively know that towing a car and removing items of a trespasser from property where the owner had not given someone

permission to be would be a constitutional violation.  Therefore, qualified immunity applies.

### G.  Counts I-III

"*Monell* liability exists only if official policy or custom or the actions of a person exercising policymaking authority caused a constitutional violation." *Bloodworth v. Vill. of Greendale*, 2012 U.S. App. LEXIS 7153, at *7 (7th Cir. 2012).  Because no Constitutional violations have been adequately alleged, no *Monell* claim can stand.  Counts I-III are dismissed.

Further, El-Bey's allegations of policy and custom do not pass *Iqbal* standards:  they are completely conclusory, throw-it-against-the-wall-and-see-what-sticks language (*e.g.*, "pursuant to one or more policies, practices and/or customs of Defendant").  No specific policies or practices are alleged.  No indication whatsoever is given as to how all three villages fail "to adequately keep hard copies and electric computer records of misconduct."

Indeed, the allegations against all three municipalities, in regards to the *Monell* claims, are word-for-word identical language, with only the name of the officers and municipality substituted. In at least one case, even the name was not substituted, as in paragraph 98, where El-Bey neglected to change the party from the "Dolton officer" in his *Monell* claim against Riverdale.  This is not to say cutting-and-pasting is forbidden.  But here, it operates

to accentuate the wholly conclusory language and lack of any specificity that would "nudge[] his claim[] . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (internal punctuation omitted).

### H. Count IV

Count IV is a complaint of excessive force and illegal search and seizure. For the reasons explored in Sections A-E above, the Court finds no adequate allegations of excessive force or illegal search and seizure. The Count is dismissed.

### I. Count V

Count V does not state a statutory section providing its basis, but does say the cause of action comes under the "Federal Civil Rights Acts," for False Arrest and False Imprisonment. The Court assumes this to be a § 1983 action and, as noted above, because officers had probable cause to arrest and detain El-Bey, no action can lie under § 1983.

### J. Count VI

For the same reasons, Count VI, alleging false arrest and unreasonable search and seizure is dismissed also.

### K. Counts VII-IX ("Indemnification")

The Court is unable to find El-Bey's referenced Illinois Statute, 735 Ill. Comp. Stat. 10/9-102. The Court believes he is referring to 745 Ill. Comp. Stat. 10/9-102, which merely allows a public entity to pay any tort judgment against an employee. To the

extent these counts seek recovery from the three village defendants for individual actors' torts or constitutional violations, there being no adequately alleged torts or constitutional violations, these counts are dismissed.

### L.   Counts X-XIII

These counts allege § 1983 conspiracy.  Again, these counts are dependant upon alleging an underlying constitutional violation. Because none has been adequately alleged, these counts are dismissed.  *See*, *e.g.*, *Geinosky v. City of Chicago*, No. 11-1448, 2012 U.S. App. LEXIS 6261, at *15-18 (7th Cir. 2012) (demonstrating the link between conspiracy and underlying violations by reinstating conspiracy counts in case because underlying equal protection claim was restored).

### M.   Count XIV

This count alleges a violation of the RICO statute, 18 U.S.C. § 1951(a), by Cars, Kulcyzk, DeGraff and South Holland.  There is, of course, no private right of action for citizens to enforce § 1951, so again, the Court construes broadly and assumes El-Bey meant § 1962(c), for which there is a private right of action under § 1964.

To state a claim for relief under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity.  *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011).   A pattern requires at least two predicate acts

- 19 -

occurring within ten years of each other, and the "racketeering activity" is limited to the specific acts enumerated in 18 U.S.C. 1961(1). *Id.* Being charitable, the Court can find one qualifying § 1961(1) violation (extortion of money to retrieve the car) alleged in the complaint, but no others (§ 1983 violations are not covered by RICO). Since there is an insufficient allegation of racketeering activity, the count is dismissed.

### N.  Count XV

This Count alleges illegal search and seizure against Kulcyzk and the unknown truck driver. Setting aside the question of whether these two defendants, by virtue of Cars' contract with South Holland, are state actors, the claim fails for the reasons stated in Sections B-C above. The Count is dismissed.

### O.  Count XV No. 2

As Defendant South Holland points out, the Seventh Circuit does not recognize a cause of action under § 1983 for malicious prosecution because an adequate state law redress of wrongful prosecution is available in Illinois. *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001). Accordingly, the count is dismissed.

### P.  Count XVI (State Law Battery)

El-Bey directs this count at a number of Defendants, but only the unknown Dolton officer who handcuffed him and the several unknown officers who picked him up are alleged to have made physical contact with him. Therefore, the battery count can only

- 20 -

be lodged against those officers, but this is of no consequence, because the entire action fails. As Defendant Dolton points out, state law immunizes police officers for their acts or omissions in the enforcement of any law unless the officers' acts are willful or wanton. As discussed above, the alleged "battery" consisted of handcuffing El-Bey and lifting him up. The Court does not see this as wanton misconduct. The count is dismissed.

### Q. Dismissal with Prejudice

In deciding whether to dismiss with prejudice (and foreclose any attempts to amend the complaint) this Court is mindful that the Court should "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(3). However, leave is not to be automatically granted. *Johnson v. Cypress Hill*, 641 F.3d 867, 871 (7th Cir. 2011). Courts have broad discretion to deny amendment where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile. *Id*. at 871-872.

Here, the Court is convinced that further amendment would be futile. El-Bey's own attachments confirm he was squatting in a home to which he had no legal claim, and he is trying to sue police, village officials, neighbors and anyone who disagreed with that dubious course of conduct. Furthermore, El-Bey has now had three bites at the apple, this being his Second Amended Complaint. He is not entitled to a fourth, particularly when Defendants have

had to each file two Motions to Dismiss, both of which pointed out numerous deficiencies in El-Bey's Complaint and filings. Some of the same legitimate objections in Defendants' current Motions to Dismiss were the same ones raised to the First Amended Complaint. El-Bey apparently paid no heed to those deficiencies then; the Court doubts he will (or even could) substantially change his pleading if given a fourth chance. Furthermore, the Defendants would be substantially prejudiced by having to continue to defend a meritless lawsuit.

### IV.  CONCLUSION

For the reasons stated herein, the Defendants' Motions to Dismiss are granted in their entirety. All counts of the Plaintiff's Complaint are dismissed with prejudice.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 5/11/2012