**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JULIAN T. NETTLES-BEY, | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 11-cv-8022 |
| | ) | |
| v. | ) | Honorable Judge Gottschall |
| | ) | |
| CARS COLLISION CENTER, LLC, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS VILLAGE OF SOUTH HOLLAND'S,**
**B. BURKE'S, AND P. WILLIAMS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, Julian T. Nettles-Bey ("Mr. Bey"), by his attorneys, responds to Defendants Village of South Holland, Officers B. Burke and P. Williams' (collectively "Defendants'") Motion to Dismiss as follows:

**I.     INTRODUCTION**

Defendants' motion to dismiss should be denied.  Julian T. Nettles-Bey is not Sabeel El-Bey.  He is not related to him and the circumstances behind Mr. Bey's Complaint are altogether different from those alleged, and/or experienced from Sabeel El-Bey.

Julian T. Nettles-Bey was awakened by the South Holland police early on a Sunday morning from the home where he was invited to stay as a guest, and where he was hastily arrested.  His belongings were seized, and his car was towed.  Mr. Bey was not a trespasser; he had no knowledge that his host did not actually own the home where he was staying.  No one ever told Mr. Bey that his presence in the home was in any way unlawful.  Given these facts, which were fully known by Defendants **at the time of the arrest**, the officers did not have

probable cause to arrest Mr. Bey for trespassing. Defendants should have recognized Mr. Bey's Fourth Amendment rights as the invited houseguest he reasonably believed himself to be. While Defendants could have given Mr. Bey notice that his presence was unwanted, they did **not** do that. Instead, Defendants arrested Mr. Bey without any warrant or probable cause that he was committing any offense, seizing both him and his property. Defendants' actions clearly violated Mr. Bey's Fourth Amendment rights.

Mr. Bey has also set forth sufficient facts that Defendants' actions constituted common law fraud. After Defendants seized Mr. Bey's belongings and towed his car, they refused to return his car to him, even when he returned to the South Holland police station with the precise documents they asked him to retrieve. In total, Mr. Bey had to go to the police station over, and over, and over, and over again, on five separate occasions, only to have to seek relief from a Cook County court in order to retrieve his vehicle. Defendants' delaying tactics increased the fees Mr. Bey had to pay: $1,475.00 to retrieve his car after 30 days, when Mr. Bey was free to leave the police station virtually one hour after his arrest. Accepting as true all facts pleaded in the Complaint, Defendants cannot prevail in their Motion to Dismiss.

## II.    ARGUMENT

### A.    Mr. Bey's Fourth Amendment rights were violated, and his Complaint should not be dismissed.

Mr. Bey has stated valid claims detailing Defendants' violation of his Fourth Amendment rights, claims that should not be dismissed. In evaluating South Holland Defendants' motion to dismiss based on Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded facts as true, and draw all possible inferences in the plaintiff's favor. *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2011). As the facts in the Complaint confirm, Mr. Bey had valid Fourth Amendment rights in the home, in which he was staying, where he believed he

was a houseguest. Mr. Bey was falsely arrested for trespassing -- a crime for which he was found not guilty, and for which Defendants lacked any evidence whatsoever of the commission of a crime. Mr. Bey had no knowledge that his presence in the home was unlawful, and he was never given any notice by Defendants or anyone else. Because Defendants had no evidence of any such notice, their arrest of Mr. Bey was without any probable cause. While the officers may have appropriately asked him to leave the home and remove his car, their decision to arrest him was a violation of Mr. Bey's Fourth Amendment rights. Defendants' other arguments also cannot support the dismissal of Mr. Bey's Fourth Amendment claims. Defendants unlawfully towed his vehicle, which had no connection whatsoever to Mr. Bey's knowledge or notice of others' property rights. Defendants cannot prevail on their affirmative defense of qualified immunity, as they cannot establish the elements of the defense through Mr. Bey's complaint. Finally, Mr. Bey has pleaded sufficient facts in his *Monell* claim, that the Village of South Holland was targeting those perceived to be Moors. Accordingly, Mr. Bey's claims should not be dismissed.

1.      **As an invited houseguest, Mr. Bey is afforded Fourth Amendment protections, and thus had a reasonable expectation of privacy in the home.**

As a guest of Sabeel El-Bey ("Sabeel"), who Mr. Bey believed owned the home, Mr. Bey had a reasonable expectation of privacy, and is thus afforded with Fourth Amendment protection. The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Constitution Amend. IV. Contrary to Defendants' assertions, the "Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967) (finding a

3

reasonable expectation of privacy in a public phone booth). Mr. Bey's status "**as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable**." *See Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990). In a Fourth Amendment analysis, the Court must evaluate the reasonableness of a person's privacy expectations -- not from South Holland et al.'s perspective, but rather from the perspective of the person whose rights are being infringed upon, i.e. Mr. Bey's perspective. From the overnight guest's perspective, an expectation of privacy is considered reasonable.

> To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home.
>
> **From the overnight guest's perspective**, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we can-not monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend. Society expects at least as much privacy in these places as in a telephone booth—a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable.

*Olson*, 495 U.S. at 98-99 (emphasis added). For the same reasons as the overnight guest in *Olson*, Mr. Bey had a reasonable expectation of privacy. He sought shelter in another's home when he traveled from Tennessee to Illinois. He traveled to a strange city for business. (Complaint, ¶14.) He house-sat for a friend. (Id., ¶16.) He reasonably believed he was a guest in Sabeel's home. All of these circumstances are recognized by the Supreme Court in *Olson*, as establishing a <u>reasonable</u> expectation of privacy. 495 U.S. at 98-99.

Defendants argue that ownership and permission from the owner are purportedly necessary to establish an individual's Fourth Amendment rights. Defendants are wrong. Guests "are entitled to a legitimate expectation of privacy <u>despite the fact that they have no legal interest in the premises and do not have the legal authority to determine who may or may not enter the household</u>." *Olson*, 495 U.S. at 99 (emphasis added). Ownership by others is not at all determinative of one's Fourth Amendment rights. *Katz*, 389 U.S. at 351. In support of their argument, Defendants cite to two cases, whose facts are completely inapposite. First, the defendant in *United States v. Curlin* **had already been evicted** from the home he was occupying. 638 F.3d 562, 565 (7th Cir. 2011). Officers "twice left copies of the eviction order at the residence." *Id.* In deciding that Mr. Curlin did not have any reasonable expectation of privacy, the court reasoned that it was because "Curlin <u>had notice</u> that his continued occupancy had been adjudged to be unlawful." *Id.* at 566 (emphasis added). Similarly, in *El-Bey v. Village of South Holland*, Judge Leinenweber found that Sabeel El-Bey, an actual claimed "Moor," had no reasonable expectation of privacy, when he was arrested **at the very same house no less**, two weeks later. (Complaint, Ex. A, pp. 9-10.) In contrast to Mr. Bey, Sabeel knew the home did not belong to him. He included in his filings a title insurance report showing the owner of the home to be Adolph Clark. (Id., p. 10.) Furthermore, unlike Mr. Bey, the police warned Sabeel **the day before he was arrested**, that he was not to return to the home. (Id.) Judge Leinenweber relied upon those repeated instances of notice to Sabeel that he was trespassing, -- in concluding that Sabeel did not have a reasonable expectation of privacy in the home. No such notice was ever given to Mr. Bey, by Defendants or anyone else, that he was anything but an invited guest in the home. Accordingly, Mr. Bey had, and maintained, a reasonable expectation of privacy in the home.

Defendants' suggestion, that an overnight guest must first research who actually owns the home to which he was invited, would add an additional requirement for Fourth Amendment protection, that no court has ever required before. Indeed, the "longstanding social custom" of staying overnight in another's home, does **not** include researching title records before accepting a host's invitation. *See Olson*, 495 U.S. at 98. In their Motion, Defendants invite this Court to add a new restriction to a citizen's Fourth Amendment rights, one that is completely unknown to our society. Defendants' proposed additional title search requirement is completely unsupported by the text of the Fourth Amendment, by any statute, or by any court holding.

**2.    Defendants did not have probable cause to arrest Mr. Bey for trespassing.**

Defendants did not have probable cause to arrest Mr. Bey for trespassing. A police officer has probable cause to arrest someone "if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009), *quoting Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Trespassing requires knowledge, or notice from the owner or occupant, that he is trespassing. 720 ILCS 5/21-3. All of the facts known to Defendants on the morning of the arrest confirm that Mr. Bey did not have such knowledge or notice, and therefore he could not have been trespassing. Defendants Burke and Williams arrived at the house at 84 Woodland Drive, in response to a call from Mr. Clark, an individual who, Defendants admit, was, at the time of the arrest, cited in publicly available documents as being in default on the house so as to raise very real questions as to his ownership. While Mr. Clark claimed that he owned the house, Mr. Clark did not live there, and the publicly available records, had they been accessed by the officers, would have revealed those

6

"ownership" issues. The only inhabitants of the home were Mr. Bey and Ms. Mohammad. (Complaint, ¶33.) The house had no signs of a break-in. Mr. Bey was able to enter the home through a garage door opener given to him from Sabeel, who he believed owned the house. (Id., ¶17.) Mr. Bey parked his car in the driveway, in clear view of anyone who may walk by. (Id.) All outward indications available to Defendants indicated that Mr. Bey was not trespassing. Certainly there were no indications at all that Mr. Bey believed his presence in the home to be unlawful in any way.

As Defendants had spoken to all of the witnesses present, it was clear that Mr. Bey had no knowledge or notice of trespassing whatsoever. Neither the Defendants, nor Mr. Clark, Ms. Mohammad, Sabeel, or anyone else gave any indication, much less notice, to Mr. Bey that he was trespassing. (Id., ¶29.) Mr. Bey himself explained to Defendants that he had permission to stay there from Sabeel, who he believed to own the house. (Id., ¶18.) Mr. Bey gave the officers Sabeel's phone number, so they could contact him to clarify their perceived misunderstanding. (Id.) After interacting with Mr. Bey, it should have been clear to Defendants that he had no knowledge or notice of the alleged trespassing, whatsoever. This fact was later adjudicated before Judge Turner of the Cook County Court, who found Mr. Bey could not be guilty of trespassing -- because there was absolutely no evidence of any knowledge or notice. (Id., ¶30.)

Defendants do not, and cannot, dispute any of these facts. Rather, Defendants claim to have had probable cause to arrest Mr. Bey, because "they knew or reasonably believed that Plaintiff was not lawfully in the premises in question." (Motion, p. 6.) However, this is simply **not** the standard for trespassing, which requires knowledge or notice. 720 ILCS 5/21-3. Merely being someplace, even without permission, is not an offense for which Defendants may arrest someone. Indeed, Defendants did not even identify one criminal act that may be violated

7

through "not lawfully [being] in the premises in question." Probable cause requires at least some "facts and circumstances within the officer's knowledge" of an offense being committed. *Gonzalez*, 578 F.3d at 537. Here, there were no facts or circumstances of **any** offense being committed. Given the lack of any evidence of a crime, and serious questions of record with the ownership of the house, at most Defendants should have asked Mr. Bey to leave.

Defendants further claim to have probable cause, from Mr. Clark's purported "criminal complaint against Plaintiff indicating that Plaintiff was trespassing." (Motion, p. 7.) First of all, there does not appear to have been any criminal complaint that had been filed; Defendants merely spoke with Mr. Clark outside the home on the morning of the arrest. (Complaint, ¶34.) Second, any such criminal complaint transmitted to Defendants does not speak to the standard required of trespassing: that Mr. Clark, someone, had to give notice ***to Mr. Bey*** of his trespassing, not merely notice to the police. Mr. Clark did not give any such notice to Mr. Bey. (Id., ¶29.) While Mr. Clark may or may not have owned the home at the time of the arrest, neither he nor Defendants took any steps to inform Mr. Bey of this key fact. Accordingly, Defendants did not have any probable cause to arrest Mr. Bey for trespassing. That would explain why one of South Holland's own superior officers admitted, within earshot of Plaintiff, no less, that his colleagues should have neither arrested Mr. Bey -- nor towed his car. (See Complaint, ¶25.)

### 3. Towing Mr. Bey's car was unlawful.

Towing Mr. Bey's car was unlawful, because Defendants lacked probable cause to associate Mr. Bey's minivan with any criminal activity, and his vehicle was neither abandoned nor unattended. First of all, Mr. Bey's vehicle is afforded the same Fourth Amendment protection as he is, because his car was parked in the driveway, in the curtilage of the home. *See*

*United States v. Simms*, 626 F.3d 966, 970 (7th Cir. 2010). The "seizure of an item in plain view is reasonable if there is probable cause to associate the property with criminal activity." *Perlman v. Chicago*, 801 F.2d 262, 267 (7th Cir. 1986). As discussed above, there was no probable cause to arrest Mr. Bey, because he did not have knowledge or notice that his presence in the home was unlawful. Furthermore, there was no probable cause to seize Mr. Bey's vehicle from the property, because it was not associated with any criminal activity. Mr. Bey was not trespassing, as he had no knowledge or notice that his presence was unlawful. Mr. Bey's vehicle had even less connection to the alleged crime of trespassing, because seizing the vehicle provides no evidence whatsoever regarding Mr. Bey's knowledge or notice of any other's rights to the property.

Even if this Court should not find Mr. Bey's vehicle to be afforded Fourth Amendment protection, its seizure was still not authorized under Illinois law as Defendants contend. Illinois law only allows owners of real property to tow vehicles that are "abandoned or left unattended." 625 ILCS 5/4-203(f). Mr. Bey's vehicle was neither abandoned nor left unattended -- it was in plain view directly in front of the home where Mr. Bey was staying. (Complaint, ¶17.) Towing Mr. Bey's car was an unlawful violation of his Fourth Amendment rights, and was not authorized under Illinois law.

### 4. Defendants cannot rely upon the affirmative defense of qualified immunity.

Defendants cannot prevail on their affirmative defense of qualified immunity in their motion to dismiss. Qualified immunity is an affirmative defense that requires the court to determine if the officers had probable cause, and if not, "whether a reasonable officer could have mistakenly believed that probable cause existed." *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001). A motion to dismiss based on an affirmative defense is inappropriate unless the complaint alleges all the elements necessary for the affirmative defense. *Cancer Found., Inc. v.*

*Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-675 (7th Cir. 2009). Here, there are no facts in the complaint to establish such an affirmative defense, which rests entirely on what the officers mistakenly believed. Neither the Defendants nor Mr. Clark gave any notice to Mr. Bey that he was trespassing. (Complaint, ¶29.) Nothing in the complaint suggests that Mr. Bey ever had knowledge that his presence in the home was unlawful. Similarly, there is no evidence to suggest the arresting officers mistakenly believed Mr. Bey had such knowledge. Defendants' affirmative defense rests merely on their unfounded speculation that whatever the officers were thinking, it must "have been reasonable." There are simply no facts to support Defendants' affirmative defense, which must therefore be denied.

> **5.** **Mr. Bey has adequately pleaded a *Monell* claim against the Village of South Holland.**

Defendants' actions clearly indicate the Village of South Holland has a policy or custom of targeting people they believe to be members of the Moorish Science Temple. A *Monell* claim against a governmental unit for deprivation of constitutional rights can be established by showing either an express policy, or a widespread practice, constituting a custom or usage causing such deprivation. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). Following Mr. Bey's arrest, one of the defendant arresting officers said, "we have another one of them." (Complaint, ¶19.) This statement not only reflected Defendants' belief that Mr. Bey fit the description of someone targeted for arrest, but that it was Defendants' policy, custom or practice to arrest such people as **presumed** criminals. Defendants overtly demonstrate such practice in their Motion, attempting to connect Mr. Bey with the Moorish Science Temple in "filing 'bogus deeds' on properties." (Motion, p. 2.) Mr. Bey never filed any such deed, but was nonetheless "profiled" as a member of the Moorish Science Temple by the Defendant officers, targeted for deprivation of his constitutional rights, and hastily arrested.

In addition to Mr. Bey, others who are perceived to be members of the Moorish Science Temple have also been singled out for unconstitutional treatment. In another case, Mr. Airrion Blake-Bey complained that he, too, was arrested and his car towed when he was pulled over by Village of South Holland police officers, upon their learning that he was a Moorish American National. (Third Amended Complaint in *Blake-Bey v. Village of South Holland*, No. 11-cv-5987, DE 55, p. 3.) Upon learning Mr. Blake-Bey was a Moor, one of the South Holland police officers allegedly called for additional police assistance, stating that he had pulled over "one of those sovereigns." (Id.) Apparently, other South Holland officers were also made aware of "the Moors" -- to believe that their presence requires additional police assistance, arrest, and towing. Given such an indication that there is a policy, or at least a widespread practice, Mr. Bey has adequately pleaded a *Monell* claim against the Village of South Holland.

**B.      Mr. Bey has adequately pleaded fraud for Defendants' delaying tactics to increase the fees Mr. Bey had to pay to retrieve his car.**

Mr. Bey has also adequately pleaded Illinois Common Law Fraud. The elements of common law fraud are (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Doe v. Dilling*, 228 Ill. 2d 324, 342-343, 888 N.E. 2d 24, 35-36 (Ill. 2008).

Defendants falsely told Mr. Bey that he could retrieve his car upon his return with specific documents, that he could only obtain from out-of-state. (Complaint, ¶59.) At the time Defendants gave such statements, they knew the statements to be false, as Mr. Bey would return to the South Holland police station time and time again, only to learn that the documents requested on the previous occasions were still not sufficient to retrieve his car. (Id., ¶¶59-60.) Defendants gave such statements, so that Mr. Bey would necessarily require more and more

11

time, thus incurring additional storage fees for Defendants, that Mr. Bey would ultimately have to pay to retrieve his car. (Id., ¶¶59-61.) Mr. Bey was justified in his reliance upon the Defendants' statements, and spent substantial time and money recovering multiple documents related to his ownership of his car. (Id., ¶ 62.) Finally, Mr. Bey suffered damage resulting from his reliance upon Defendants' statements, including $1,475.00 in fees for him to ultimately retrieve his car, in addition to other costs that he had to necessarily incur without having his car or his belongings stored therein. (Id., ¶ 63.) Accordingly, Mr. Bey has stated the facts for each pleaded element in his claim against Defendants for common law fraud.

Defendants erroneously believe Mr. Bey's claim should be dismissed, because he ultimately recovered his vehicle. (Motion, p. 12.) However, the damage Mr. Bey suffered was not the loss of his vehicle, but rather the excessive fees and costs that he had to incur because of Defendants' misrepresentations and delaying tactics used to incur those outrageous storage fees, and to further deprive Mr. Bey from the use of his car and belongings therewithin. (Complaint, ¶¶59-63.) The majority of Mr. Bey's belongings were simply, cavalierly, discarded from the house. (Id., ¶22.) While Mr. Bey was ultimately able to recover his vehicle, he still suffered the claimed damages that resulted from Defendants' fraudulent representations.

Defendants also argue that Mr. Bey's fraud claim should be dismissed for purportedly failing to plead his claim with particularity, pursuant to Fed. R. Civ. P. 9(b). (Motion, p. 13.) However, such particularity does not require Mr. Bey to recite the specific fraudulent statements in his complaint as Defendants claim. In alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b) (emphasis added). This does not mean that a plaintiff must give the defendant such details needed for his defense. *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (Posner, J.) "A charge of

fraud is no more opaque than any other charge. The defendant can get all the information he needs to meet it by filing a contention interrogatory." *Id.* Rather, the purpose of the heightened pleading requirement in fraud cases is avoid harm to a business or individual, because fraud may be charged irresponsibly. *Id.* Mr. Bey did allege, with particularity, the circumstances constituting fraud, as he was required to do under the Federal Rules. As detailed above and in his complaint, Mr. Bey described how he had to return to the South Holland police department on five different occasions in his efforts to retrieve his car, and still had to seek relief from a Cook County court -- after paying $1,475 in fees, and being deprived use of his car and belongings for a month. (Complaint, ¶¶23-27.) The additional details Defendants seek are not required of a pleading, but rather are more appropriately sought in discovery. *See Ackerman*, 172 F.3d at 469.

### III.  CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be DENIED. Given the Constitutional issues addressed herewithin, Plaintiff respectfully requests the opportunity of oral argument, should the Court deem it appropriate.

Respectfully submitted,

Julian T. Nettles-Bey

Dated: July 11, 2012              By:    /s/Richard D. Harris
                                         Richard D. Harris, Reg. No. 1137913
                                         Richard P. Bender, Reg. No. 6292375
                                         GREENBERG TRAURIG, LLP
                                         77 West Wacker Drive, Suite 3100
                                         Chicago, Illinois  60601
                                         Telephone:  312-456-8400
                                         Facsimile:  312-456-8435

                                         Counsel for Plaintiff Julian T. Nettles-Bey
                                         by Court Appointment

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS VILLAGE OF SOUTH HOLLAND, B. BURKE, AND P. WILLIAMS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated:  July 11, 2012                    /s/ Richard P. Bender