# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIAN T. NETTLES-BEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| CARS COLLISION CENTER, LLC, ) | Case No. 11 C 8022 |
| TONY KULCYZK, VILLAGE OF SOUTH ) | |
| HOLLAND, Police Officer P. WILLIAMS, ) | |
| Police Officer B. Burke, and Unknown ) | |
| Police Officers, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Now before the court are two motions to dismiss. The Defendants Village of South Holland ("South Holland") and Officers P. Williams and B. Burke (collectively, "the South Holland Defendants") moved to dismiss the Plaintiff Julian Nettles-Bey's Amended Complaint in its entirety and with prejudice, for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). The Defendants Cars Collision Center, LLC ("Cars") and Tony Kulcyzk (collectively, "the Cars Defendants") moved to dismiss Counts I and IV under Rules 12(b)(5), 12(b)(6), and 9(b). For the reasons stated below, the motions are granted in part and denied in part.[1]

### I. BACKGROUND

This case arises out of the allegedly wrongful arrest of Nettles-Bey for trespassing. Nettles-Bey has sued the arresting officers, unknown police officers, the Village that employs the

---

[1] The Amended Complaint includes no allegations against Timothy Charles Lapp or "Unknown tow truck driver," who were named as Defendants in the original Complaint. The court dismisses these defendants.

officers, and the company that allegedly towed his minivan after the arrest, along with its manager. The following facts are drawn from Nettles-Bey's Amended Complaint. In August 2010, Nettles-Bey accepted Sabeel El-Bey's invitation to stay in a home located at 84 Woodland Drive in South Holland. At the time, Nettles-Bey understood that El-Bey had recently bought the home. On August 21, 2010, El-Bey gave Nettles-Bey a garage door opener so he could get in and out of the house. Nettles-Bey parked his minivan in front of the house in its driveway and spent the night in the house. Also in the house was Felicia Mohammad, who allegedly rented a room from El-Bey; El-Bey was out of town.

As it turned out, El-Bey did not own the house. The parties agree that Adolph Clark was the true owner.[2] The next morning, South Holland police officers Williams and Burke spoke with Clark, who apparently was not living in the home. Nettles-Bey alleges on information and belief that Clark claimed to be the homeowner and complained of trespassers in his home.[3] Though Nettles-Bey acknowledges that Clark was the rightful owner of the house, he alleges that he did not know that at the time and that he was never warned that he was on Clark's property illegally.

Officers Williams and Burke knocked on the door of the house, and Nettles-Bey opened the door. The officers asked why he was there. Nettles-Bey answered that he was asked to stay in the home by the homeowner, and he gave the officers El-Bey's phone number. Nettles-Bey alleges that the officers did not follow up on Nettle-Bey's explanation of why he was in the

---

[2] The South Holland Defendants attach the public records from the Cook County Recorder of Deeds. They argue that these records prove that Clark was the owner of the property and that El-Bey was fraudulently claiming ownership under a bogus deed inserted into the chain of title. While colorful, these arguments and evidence are not relevant at this stage because Nettles-Bey alleges that neither he nor the arresting officers had investigated the public records of the house's ownership on or before August 22. At this stage, the disposition of Nettles-Bey's claims rests on what Nettles-Bey pled that he and the officers knew at that time. The records are not relevant to that question.

[3] The South Holland Defendants claim that the police went to the house based a criminal complaint filed by Clark. At this stage, however, the court considers only the facts alleged in the complaint and those of which it can take judicial notice. Factual assertions in the Defendants' briefs cannot be considered. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010).

house either by calling El-Bey or looking at the house's deed. Instead, Williams and Burke arrested Nettles-Bey for trespassing without giving him the opportunity to remove his minivan from the property. At the time the officers arrested Nettles-Bey, he alleges they also called Tony Kulcyzk, manager of Cars, to have him tow and store Nettles-Bey's minivan. Nettles-Bey alleges that Kulcyzk knew or should have known that the officers lacked probable cause or a warrant to make the arrest and order the tow, and that they did not have his permission to tow the car.

On the way to the police station, Nettles-Bey overheard one of the officers say, "We have another one of them." (Am. Compl. at ¶19, ECF No. 42.) Nettles-Bey understood "them" to be a reference to members of the Moorish Science Temple, which the Amended Complaint alleges is a sect of Islam founded in New Jersey in 1913. Nettles-Bey alleges that the officers decided to arrest him, rather than asking him to vacate the property, because they assumed that he was a Muslim and member of the Moorish Science Temple. Nettles-Bey claims the officers made this assumption because of his skin color, his last name (he alleges Moors commonly append "-Bey" to their last names), and because Mohammad and El-Bey are Moors.[4]

Nettles-Bey alleges that South Holland "trains its police force to identify men bearing the name of Bey, among others, as members of the Moorish Science Temple," and "facilitate[s] the conduct complained of in this complaint, through their pre-hiring review, training, investigatory or disciplinary actions of officers who interact with actual or apparent Muslims, and those believed to be associated with the Moorish Science Temple." (Am. Compl. at ¶¶ 50, 53.) Nettles-Bey also asserts that South Holland "presumes such people are committing real estate fraud,"

---

[4] Both El-Bey and Mohammad brought lawsuits against South Holland and other defendants on similar grounds. *See El Bey v. Vill. of Dolton*, No. 11 C 4949, 2012 WL 1658301 (N.D. Ill. May 11, 2012) (dismissing El-Bey's Second Amended Complaint in its entirety and with prejudice); *Muhammad v. Vill. of S. Holland*, No. 12 C 0275 (N.D. Ill). Mohammad's case is still pending and has not yet had any dispositive rulings. The court notes the different spellings of El-Bey and Mohammad in the other lawsuits, and uses the spellings in Nettles-Bey's Amended Complaint.

"has singled out other people whose last name is Bey . . . for similar unlawful deprivation of their constitutional rights," and "has singled out actual or apparent Muslims as presumptive criminals." (Am. Compl. at ¶¶ 50, 53, 54.)

After Nettles-Bey was released from custody, he attempted to retrieve his minivan. Nettles-Bey alleges, "Unknown Police Officers, on repeated occasions, gave false statements of fact to [him], namely that he could retrieve his car with specific documents that took a him a great deal of time and effort to obtain from out-of-state, and that ultimately, repeatedly were insufficient for him to actually recover his car." (Am. Compl. at ¶ 59.) The officers made these knowingly false statements, Nettles-Bey alleges, to make it as slow and difficult as possible for him to get his minivan back, thereby generating a larger storage fee for Cars and South Holland. Nearly one month after his arrest, Nettles-Bey secured a court order from a Cook County judge that the minivan be released.

Nettles-Bey was eventually tried for criminal trespassing (he does not specify under which statute). At the time of Nettles-Bey's arrest and conviction, Illinois has several criminal trespassing statutes. *E.g.* 720 Ill. Comp. Stat. § 5/19-4(a)(1) (2000) (amended 2013) ("A person commits the offense of criminal trespass to a residence when, without authority, he knowingly enters or remains within any residence[.]"); 720 Ill. Comp. Stat. § 5/21-3(a)(1) (2007) (amended 2013) (a person commits "criminal trespass to real property" when he or she "knowingly and without lawful authority enters or remains within or on a building[.]"). Nettles-Bey alleges he was found not guilty because the judge found there was no evidence that Nettles-Bey had any notice that he was trespassing.

Nettles-Bey filed a *pro se* complaint in this court. After the appointment of counsel, he filed this Amended Complaint. His Amended Complaint seeks compensatory and punitive

damages as well as attorney's fees and costs under 42 U.S.C § 1983 and Illinois common law. The Amended Complaint does not specify which counts apply to which defendants, but the allegations in the complaint make this relatively clear. Count I alleges a claim for illegal seizure of Nettles-Bey's person (against Officers Williams and Burke) and of his minivan (against Officers Williams and Burke and the Cars Defendants). Additionally, Nettles-Bey makes a discrimination claim against the South Holland Defendants. Count II alleges a claim of false arrest against Officers Williams and Burke. Count III alleges a *Monell* claim against South Holland regarding its training and policies surrounding the police's treatment of individuals who are apparently Moors or Muslims. Count IV alleges a claim of fraud against the unknown officers and the Cars Defendants because of the allegedly false representations made by the unknown officers about the documents necessary to release Nettles-Bey's minivan.

## II.  LEGAL STANDARD

For purposes of a motion to dismiss, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). The plaintiff's complaint must offer "enough facts to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's

5

allegations. *Twombly*, 550 U.S. at 556. Allegations of fraud are subject to a heightened pleading standard. Fed. R. Civ. P. 9(b). This means the plaintiff must, at a minimum, provide the time, place, and content of the alleged false representations, the method by which the representations were communicated, and the identities of the parties to those representations. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

### III. ANALYSIS

#### A. False Arrest (Count II)

Nettles-Bey claims the arresting officers are liable for false arrest because they arrested him without probable cause.[5] In order to prevail on his false arrest claim, Nettles-Bey must prove that the arresting officers lacked probable cause to arrest him. *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011); *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("Probable cause is an absolute bar to a § 1983 claim for false arrest."). "Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, to believe that the suspect has committed, is committing, or is about to commit an offense." *Harney v. City of Chi.*, --- F.3d ----, No. 10 C 2095, 2012 WL 6097336, at *4 (7th Cir. Dec. 10, 2012). If an officer "has an objectively reasonable basis to believe" that an individual is committing a crime, the officer has probable cause to arrest him or her. *Schor v. City of Chi.*, 576 F.3d 775, 778 (7th Cir. 2009).

The South Holland Defendants argue that the Amended Complaint amply demonstrates that the officers had probable cause to arrest Nettles-Bey for trespassing. Nettles-Bey responds that the officers lacked probable cause because they did not have any evidence that he knew his

---

[5] Nettles-Bey also alleges the officers arrested him because of his apparent religion. While this claim is discussed more fully below, the court notes that Nettles-Bey cannot use this allegation of religious discrimination to buttress his claim that the officers lacked probable cause to make the arrest, because the Supreme Court has held that the subjective intention of the arresting officer is not relevant to a court's determination of probable cause. *Whren v. United States*, 517 U.S. 806, 807 (1996).

presence in the home was illegal. Nettles-Bey alleges that the Cook County trial judge acquitted him of criminal trespass on the grounds that the state had not presented evidence that he was on notice his presence was unauthorized. Notwithstanding Nettles-Bey's acquittal, knowledge that one's presence is illegal is not a required element of Illinois' criminal trespass statute. "A person commits the offense of criminal trespass to a residence when, without authority, he knowingly enters or remains within any residence[.]" 720 Ill. Comp. Stat. § 5/19-4(a)(1) (2000) (amended 2013). In interpreting this provision, the Illinois Appellate Court has ruled that "it was unnecessary for the State to prove that defendant had knowledge of his lack of authority to enter the residence." *People v. Davis*, 968 N.E.2d 682, 684 (Ill. App. Ct. 2012). Instead, the Illinois court ruled that "knowingly" modifies only "enters the residence of another," whereas it held that "absolute liability" applies to the "without authority" element of trespass. *Id*. at 685-86.

In his Amended Complaint, Nettles-Bey bases his false arrest claim solely on the fact that the officers had no evidence that he knew his presence in Clark's home was illegal. Having established that such knowledge is not a required element of Illinois' criminal trespassing statute, the court turns to the question of whether the officers had probable cause to arrest Nettles-Bey. Taking as true all the well-pled factual allegations in the Amended Complaint, it is clear that the officers had probable cause to believe that Nettles-Bey was trespassing at the time of his arrest. Nettles-Bey alleges, "On information and belief, Defendants Williams and Burke spoke with Mr. Adolph Clark on August 22, 2010, who claimed to be the homeowner of the same property, and who complained of trespassers." (Am. Compl. at ¶ 35.) At the time the officers arrested Nettles-Bey, the Amended Complaint alleges that facts within the officers' knowledge were that Nettles-Bey had knowingly entered Clark's residence at the invitation of El-Bey and that he was in the

home without legal authority because Clark did not give him permission to be there. This is sufficient for probable cause.

Nettle-Bey urges that the officers should have done more investigating to confirm that he did not know his presence in the home was illegal. Even if they had done so, it would not have defeated their objectively reasonable belief that Nettles-Bey was trespassing because such knowledge is not required. Moreover, once an officer has acquired information sufficient to establish probable cause, he or she need not investigate further. *Gramenos v. Jewel Cos.*, 797 F.3d 432, 437-42 (7th Cir. 2008). Because Nettles-Bey's Amended Complaint demonstrates that arresting officers had probable cause to believe he was trespassing, his false arrest claim is dismissed.

## B. Illegal Seizures[6] (Count I)

Even if an arrest is supported by probable cause, it can violate the Fourth Amendment if it occurs without a warrant or warrant exception in a place where the arrestee has a "legitimate" or "reasonable" expectation of privacy. Nettles-Bey claims his warrantless arrest in Clark's home and the subsequent seizure of his minivan from the driveway violated Nettles-Bey's Fourth Amendment rights.

### 1. Seizure of Nettles-Bey

The South Holland Defendants argue that Nettles-Bey lacked a reasonable expectation of privacy in Clark's home, and so cannot assert a Fourth Amendment claim. In the alternative, they argue that the arresting officers are entitled to qualified immunity. The court agrees that qualified immunity applies. "A warrantless entry into a residence to effect an arrest is presumptively unreasonable under the Fourth Amendment." *United States v. Walls*, 225 F.3d 858, 862 (7th Cir.

---

[6] The caption of Count I reads "Illegal Search and Seizure," but Nettles-Bey has not alleged any illegal search(es), so the court addresses only the pled seizures of Nettles-Bey and his minivan.

2000). However, "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

In *Minnesota v. Olson*, the Supreme Court held, "[S]tatus as an overnight guest is *alone* enough to show that [the guest] had an expectation of privacy in the home that society is prepared to recognize as reasonable." 495 U.S. at 96-97 (1990) (emphasis added). Nettles-Bey relies on *Olson* to argue he had a reasonable expectation of privacy. The South Holland Defendants, however, argue that *Olson* does not apply because Nettles-Bey was on Clark's property illegally and therefore he had no expectation of privacy that "society is prepared to recognize as reasonable." *Id*. For support, they point to cases where courts have found that an individual who was *knowingly* in a home illegally had no reasonable expectation of privacy. *E.g. United States v. Curlin*, 638 F.3d 562, 565 (7th Cir. 2011) (plaintiff lacked reasonable expectation of privacy after he had received notice that he had been evicted, but was still living in the apartment); *Rakas*, 439 U.S. at 143 n.12 (1978) (in *dicta*, "A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate'"); *El Bey*, 2012 WL 1658301, at * 9 (holding El-Bey had no reasonable expectation of privacy in Clark's home because the police had repeatedly notified him that he could not return to Clark's home because it did not belong to El-Bey).

In order to determine whether Nettles-Bey's arrest violated his reasonable expectation of privacy, the court would have to decide whether Nettles-Bey's illegal but allegedly innocent presence in Clark's home renders his case more like the overnight houseguest staying with the permission of the owner in *Olson* or more like the holdover tenant who had been served with an

9

eviction notice in *Curlin*. Unsurprisingly, this appears to be a matter of first impression. The Supreme Court has held that whether an individual is "legitimately on a premises" may be a factor in determining whether that individual has a legitimate expectation of privacy, but it is not decisive. *Rakas,* 439 U.S. at 147. The constitutional question at issue in this case is a close call and the social value of coming to a decision on the merits would be slight because the facts are unlikely to repeat themselves. In such circumstances, a trial court may avoid making a decision on the merits of the constitutional claim and proceed directly to the issue of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court chooses to do so in this case.

Police officers are entitled to qualified immunity if "it was not clearly established at the time of the [officers' action] that their conduct was unconstitutional." *Id*. at 227 (2009). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation and citation omitted). "Although qualified immunity is an affirmative defense, the burden of defeating an assertion of qualified immunity rests with the plaintiff." *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 687-88 (7th Cir. 2001).

Officers Williams and Burke are entitled to qualified immunity because it was not clearly established, at the time of Nettles-Bey's arrest, that an overnight houseguest who was illegally on a premises could nonetheless have a reasonable expectation of privacy, if he or she did not know his or her presence was illegal. Even if the officers had known that Nettles-Bey was not on notice that he was in the house illegally, pre-existing case law (particularly *Olson* and *Curlin*), did not make it "apparent" whether Nettles-Bey had a reasonable expectation of privacy in Clark's house. *Hope*, 536 U.S. at 739. Because the officers are entitled to qualified immunity, Nettles-Bey's claim that he was seized in violation of the Fourth Amendment is dismissed.

### 2. Seizure of the Minivan

Nettles-Bey argues the seizure of his minivan was also without his consent, a warrant, or probable cause and also violated his reasonable expectation of privacy, which he argues extended to Clark's driveway as the curtilage of Clark's home. Nettles-Bey names both the arresting officers and the Cars Defendants in this claim. Because Nettles-Bey did not have a reasonable expectation of privacy in Clark's driveway, and because the officers had probable cause to seize the minivan, this claim must be dismissed as to all defendants.

A warrantless search or seizure within the curtilage of a home is presumptively unreasonable under the Fourth Amendment. *Bleavins v. Bartels*, 422 F.3d 445, 451 (7th Cir. 2005). The Supreme Court set forth a four-factor inquiry to determine whether an area is within the curtilage of a home:

> [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn,* 480 U.S. 294, 300-01 (1987). The "curtilage" has been described by the Seventh Circuit as the area "so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home." *United States v. French*, 291 F.3d 945, 951 (7th Cir. 2002). "[W]hether an area is within a house's curtilage depends not only on proximity to the house but also on the *use of the area and efforts to shield* it from public view." *Id*. (emphasis in the original).

Even assuming Nettles-Bey had a reasonable expectation of privacy in Clark's home, Nettles-Bey's Amended Complaint establishes that the driveway was not the curtilage of the home by alleging it was "in plain sight, directly in front of the home." (Am. Compl. at ¶ 17.) In his response to the motion to dismiss, Nettles-Bey uses the public visibility of his parking spot to

corroborate his assertion that he had no notice his presence was illegal. Weighing the factors listed in *Dunn*, the Amended Complaint's allegation that the driveway was visible to the public necessitates the conclusion that it was not inside the curtilage. The Seventh Circuit has repeatedly ruled that if a driveway is not enclosed by a gate or fence, it is not within a home's curtilage. *French*, 291 F.3d at 958 (collecting cases); *see also United States v. Brown*, 510 F.3d 57, 65 (1st Cir. 2007) ("If the relevant part of the driveway is freely exposed to public view, it does not fall within the curtilage.") (*see* n.7, collecting cases). Because Nettles-Bey's minivan was not parked within the curtilage of Clark's home where he may have had a reasonable expectation of privacy, he cannot assert a claim that the warrantless seizure violated his Fourth Amendment rights.

Furthermore, the officers were authorized to seize the minivan because they had probable cause to connect it with the crime of trespassing. "[T]he seizure of an item in plain view is reasonable if there is probable cause to associate the property with criminal activity." *Perlman v. Chi.*, 801 F.2d 262, 267 (7th Cir. 1986) (internal quotation and citation omitted). Probable cause exists when the item is evidence of the crime. *Id.* As discussed above, the officers had probable cause to arrest Nettles-Bey for trespassing. The car was evidence of the trespassing, and thus the seizure was reasonable. *See El Bey*, 2012 WL 1658301, at *5 (Judge Leinenweber dismissed El-Bey's claim for illegal seizure of another car that was seized from Clark's property on the same day as Nettles-Bey's, holding that the car was *per se* evidence of trespassing because someone must have put it there.). Because the seizure of the car was not illegal, this claim is dismissed as to all defendants.

**C. Claims Against South Holland (Counts I and III)**

Nettles-Bey has also named South Holland as a Defendant. His Amended Complaint appears to state two potential grounds for recovery against South Holland. First, he could recover under *Monell* if his arrest violated his Fourth Amendment rights *and* was the result of a policy or practice of South Holland. Second, he could prevail under the Equal Protection Clause even if his arrest, in and of itself, was constitutional, if his arrest was the result of unconstitutional discrimination.

1. *Monell Claim*

Nettles-Bey asserts a *Monell* claim against South Holland. Nettles-Bey alleges South Holland is liable because it "facilitated the conduct complained of in this complaint" by training officers to identify Moors and singling them out "for similar unlawful deprivation of their constitutional rights." (Am. Compl. at ¶¶ 50, 53, 54.) While a municipality may not be held vicariously liable under § 1983 for the unconstitutional acts of its employees (*see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)), it may be liable where the plaintiff's constitutional deprivation is caused by "(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Latuszkin v. City of Chi.*, 250 F.3d 502, 504 (7th Cir. 2001). Nettles-Bey makes no allegation of an express policy or any actions by a policymaker, so he appears to be alleging that his injury was caused by a policy, practice, or custom of South Holland. A claim against a municipality under *Monell* survives even where the claim against the officers is dismissed on the grounds of qualified immunity. *See Thayer v. Chiczewski*, --- F.3d ---, 2012 WL 6621169, at *11 (7th Cir. Sept. 18, 2012).

The South Holland Defendants move to dismiss Nettles-Bey's *Monell* claim. First, South Holland argues that Nettles-Bey has not adequately pled any underlying constitutional violation. Where the plaintiff's constitutional rights were not violated, the municipality cannot be held liable under *Monell*. *Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 505 (7th Cir. 2010). Because the court has held that the officers' alleged entry into Clark's home to arrest Nettles-Bey may have violated his rights secured by the Fourth Amendment, it cannot dismiss his *Monell* claim for lacking this underlying Constitutional violation. However, Nettles-Bey's *Monell* claim is limited to this alleged Fourth Amendment violation.[7]

Second, South Holland argues that Nettles-Bey's allegations are insufficient to state a claim because there are merely formulaic recitations of the elements of a *Monell* claim. In order to survive a motion to dismiss, a complaint alleging liability under *Monell* must "plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice" that caused the violation of the plaintiff's constitutional rights. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation, citation, and alteration omitted). For the purposes of evaluating the sufficiency of a complaint, the court begins by excising any legal conclusions. *Iqbal*, 556 U.S. at 679. These "are not factual allegations and as such contribute nothing to the plausibility analysis under *Twombly/Iqbal*." *McCauley*, 671 F.3d at 618.

Nettles-Bey's Amended Complaint includes several allegations regarding municipal liability. These are each evaluated in turn. First, Nettles-Bey alleges that South Holland "facilitated the conduct complained of in this complaint, through their pre-hiring review, training, investigatory or disciplinary actions of officers who interact with actual or apparent

---

[7] To the extent Nettles-Bey's claim against South Holland is alleging an equal protection claim for selective enforcement, it is addressed *infra*.

Muslims, and those believed to be associated with the Moorish Science Temple." (Am. Compl. at ¶¶ 52.) This is not a factual allegation; it is a legal conclusion. As such, it must be disregarded for the purposes of evaluating the defendant's 12(b)(6) motion. In *McCauley*, the Seventh Circuit excised a very similar *Monell* allegation that the City "authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed." *Id*. at 617.

Second, Nettles-Bey alleges that South Holland "trains its police force to identify . . . members of the Moorish Science Temple" (Am. Compl. at ¶ 50.) Nettles-Bey does not suggest why this would be improper. Factual allegations that "are entirely consistent with lawful conduct" cannot raise the plaintiff's right of relief from speculative to plausible, and so cannot adequately state a claim. *Id.* at 619.

This leaves three allegations in the Amended Complaint, that South Holland: "presumes such people are committing real estate fraud," "has singled out other people whose last name is Bey . . . for similar unlawful deprivation of their constitutional rights," and "has singled out actual or apparent Muslims as presumptive criminals." (Am. Compl. at ¶¶ 50, 53, 54.) The Seventh Circuit has "interpreted *Twombly* and *Iqbal* to require the plaintiff to provide some specific facts to support the legal claims asserted in the complaint." *Id*. at 616 (internal quotation, citation, and alterations omitted).

Nettles-Bey offers two facts to support these allegations. Nettles-Bey alleges he overheard an officer saying, "we have another one of them." (Am. Compl. at ¶19.) It is reasonable to infer that the officer was referencing his assumption that Nettles-Bey was Moor. In his response to the motion to dismiss, Nettles-Bey cites another lawsuit filed by a Moor against South Holland that alleges wrongful arrest and seizure of a vehicle, claiming the officers discriminated against the plaintiff on the basis of his religion. *See Blake-Bey v. Vill. of S.*

*Holland*, No. 11 C 5987, (N.D. Ill), Am. Compl. ECF No. 55 (dismissed pursuant to settlement).[8] In that suit, the plaintiff also alleged that the officers referenced his apparent religion around the time of his arrest. *Id.*

South Holland argues that Nettles-Bey's factual allegations do not adequately suggest a policy or practice, and so must be dismissed. As a matter of law, two alleged incidents do not show widespread practice and thus cannot trigger municipal liability. *Palka v. City of Chi.*, 662 F.3d 428, 435 (7th Cir. 2011). However, *Palka* and the cases it cites are all at summary judgment or reviewing verdicts. No cases offered by South Holland or located by the court's research suggest that a plaintiff must *plead* more than two incidents to survive a motion to dismiss. Indeed, such a hurdle would make it nearly impossible for plaintiffs to plead *Monell* claims, because they would need to plead specifics about facts known only to the defendants (and perhaps other victims not known to the plaintiffs). *See Warren v. Briggs,* No. 08-1172, 2009 WL 174996, at *5 (C.D. Ill. Jan. 21, 2009) (declining to dismiss a *Monell* claim premised on an alleged widespread practice although the defendants argued that the plaintiff had alleged only one isolated incident since "[w]ithout the benefit of discovery, it is hard to see what more Plaintiff could allege to state a claim for an unconstitutional city policy"). Because the facts Nettles-Bey pled "raise a reasonable expectation that discovery will reveal evidence" supporting his claim, his *Monell* claim is not dismissed. *Twombly*, 550 U.S. at 556.

---

[8] The South Holland Defendants reply that the court cannot take judicial notice of unproven allegations made in another complaint and that Nettles-Bey cannot amend his pleading in his response. Those points are correct, but not relevant. The court can take judicial notice of the existence of another lawsuit with similar allegations. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). Moreover, the court should consider the existence of another suit, because this fact added in response to the motion to dismiss is consistent with the allegations in Nettles-Bey's complaint. *See Id.; Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001).

2. *Equal Protection Claim*

Nettles-Bey alleges the officers arrested him, rather than asking him to vacate Clark's property, because they assumed he was a Muslim and a member of the Moorish Science Temple. "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race . . . . [T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause." *Whren*, 517 U.S. at 807. A claim for selective enforcement ("racial profiling") can survive even where the underlying arrest passes constitutional muster. "The fact that there was no Fourth Amendment violation does not mean that one was not discriminatorily selected for enforcement of a law. Plaintiffs' equal protection claims under the Fourteenth Amendment require a wholly separate analysis from their claims under the Fourth Amendment." *Carrasc v. Pomeroy*, 313 F.3d 828 (3rd Cir. 2002) (internal citation and quotation omitted). In the racial profiling context, "to show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001).

The South Holland Defendants contend Nettles-Bey has not adequately pled a claim of selective *prosecution*. They cite *United States v. Armstrong*, 517 U.S. 456, 469 (1996) for the proposition that Nettles-Bey "must allege that similarly situated arrestees of a different religion were not arrested and prosecuted." (Mot. Dismiss at 8, ECF No. 43.) Even if this were a plausible reading of *Armstrong*, the Seventh Circuit declined to apply *Armstrong* to a civil claim of racial profiling. *Chavez*, 251 F.3d at 640. Unlike criminal defendants arguing they were the victims of selective prosecution, plaintiffs asserting Equal Protection claims need not name a similarly situated individual who was not arrested. *Id*. Nettles-Bey will ultimately have to prove that the South Holland Defendants' actions had discriminatory intent and effects. For now,

Nettles-Bey's accusation of discrimination adequately puts the South Holland Defendants on notice of his claim and the grounds on which it rests, which is all that is required by Rule 8(a).

### D. Illinois Common Law Fraud (Count IV)

Nettles-Bey alleges that unknown South Holland police officers made knowingly false statements that constituted fraud when they told him "specific documents" would be required to recover his car, and then did not release the car when he brought the "specific documents." The elements of Illinois common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PriceWaterhouse Coopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996)).

The Cars Defendants argue that false statements about the future are not normally actionable as fraud in Illinois, so Nettles-Bey's fraud claim must be dismissed. "A statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law." *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (internal citation and quotation omitted); *Hayes v. Disque*, 82 N.E.2d 350, 355 (Ill. 1948) (same). "A statement that, standing alone, appears to be a statement of opinion, nevertheless may be a statement of fact when considered in context." *West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 393 (7th Cir. 1988). "Factors to be considered in determining whether a plaintiff reasonably relied on an opinion as though it were a statement of fact include 'the access of the parties to outside information,' the parties' relative sophistication, and whether 'the

speaker has held himself out as having special knowledge.'" *Costello v. Grundon*, 651 F.3d 614, 639 (7th Cir. 2011) (quoting *West*, 846 F.2d at 393-94).

Drawing all inferences in Nettles-Bey's favor, it appears that the unknown officers' allegedly false statements were exactly the type of statement on which he would be expected to rely, not mere expressions of opinion about a possible future event. Each of the factors listed in *Costello* appear to cut in favor of Nettles-Bey. So the alleged statements, if proven, could give rise to a claim of fraud, and cannot be dismissed on this basis.

The Defendants also argue that Nettles-Bey's fraud claim does not comport with the heightened pleading standards of Rule 9(b). In order to adequately plead a fraud claim, a plaintiff must allege facts including "who, what, when, where, and how" as to each supposedly fraudulent statement. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). This requires that the plaintiff's complaint allege the time, place, and content of the alleged false representations, the method by which the representations were communicated, and the identities of the parties to those representations. *Slaney*, 244 F.3d at 597. Not only does Nettles-Bey fail to identify specific officers, he fails to provide the location or means of his communication with them. He also fails to allege with particularity the content of the supposedly fraudulent statements because he does not allege what documents he was told to bring. Nettles-Bey has not pled enough detail about the who, what, or where, so his fraud claim is dismissed with leave to replead.

Should he wish to replead, however, the court notes that the Defendants demand more detail than Rule 9(b) requires. The South Holland Defendants argue that the claim fails because Nettles-Bey has not explained how the statements were untrue.[9] Rule 9(b) "do[es] not require [a

---

[9] The South Holland Defendants assert that the officers truthfully told Nettles-Bey what documents were required and argue that the documentary requirements were reasonable, but the court cannot consider the Defendant's factual assertions at this stage. *Miller*, 600 F.3d at 733.

plaintiff] to plead facts showing that the representation is indeed false." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). Instead, the plaintiff may allege that the statement was false, which Nettles-Bey has done. Moreover, Nettles-Bey has alleged that he produced the "specific documents" requested but still could not get his car back, suggesting that the statements were false. The Cars Defendants argue that Nettles-Bey has not pled with sufficient particularity *when* the allegedly fraudulent statements were made. Nettles-Bey alleges it took him nearly one month to get his minivan back, so the court can infer the statements occurred during that period. That time range may be sufficiently particular to survive a motion to dismiss,[10] but if Nettles-Bey repleads the fraud claim, he is encouraged to provide more specificity about the time of the representations.

## IV. CONCLUSION

Defendants' motions to dismiss are granted as to Nettles-Bey's claims of false arrest and illegal seizure. Officers Williams and Burke are dismissed from the case. The motion to dismiss Nettles-Bey's claims against South Holland is denied. Defendants' motions to dismiss Nettles-Bey's fraud claim are granted, with leave to replead. Should Nettles-Bey wish to replead his fraud claim, he must do so by February 28, 2013. If he does not do so, the Cars Defendants will be dismissed from the case without further order of this court.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 25, 2013

---

[10] The Seventh Circuit held that a similar period of time ("late August or early September") was sufficiently particular when coupled with the time of day ("after midnight"). *Herrerman v. Bass*, 467 F.3d 596, 601-02 (7th Cir. 2006).