**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JULIAN T. NETTLES-BEY, | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. 11-cv-8022 |
| | ) | |
| v. | ) | Honorable Judge Gottschall |
| | ) | |
| VILLAGE OF SOUTH HOLLAND, | ) | |
| PHILIP WILLIAMS and BRODERICK | ) | |
| BURKE, | ) | **JURY DEMANDED** |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**SECOND AMENDED COMPLAINT**

Plaintiff Julian T. Nettles-Bey, by his attorneys, complains against Defendants as follows:

**NATURE AND STATUTORY BASIS OF ACTION**

1.      This is an action for deprivation and violation of Plaintiff Julian T. Nettles-Bey's constitutional rights under the Civil Rights Act, 42 U.S.C. § 1983, et seq.

**THE PARTIES**

2.      Plaintiff Julian T. Nettles-Bey is a United States citizen, and resides at 309 Bertrand Avenue, Knoxville, Tennessee.

3.      Defendant Village of South Holland is a municipality located in Cook County, Illinois, and has an address of 16226 Wausau Avenue, South Holland, Illinois.

4.      Defendant P. Williams ("Williams"), as of August 22, 2010, was a police officer for the Village of South Holland, having an address of employment at 16220 Wausau Avenue, South Holland, Illinois.

5.     Defendant B. Burke ("Burke"), as of August 22, 2010, was a police officer for the Village of South Holland, having an address of employment at 16220 Wausau Avenue, South Holland, Illinois.

## JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction over the subject matter of this Complaint pursuant to 42 U.S.C. §§ 1983, 1985 and 28 U.S.C. §§ 1331 and 1343(a).  The Court has supplemental jurisdiction over Illinois state law claims, pursuant to 28 U.S.C. § 1367(a).

7.     The Court has personal jurisdiction over each of the Defendants. Defendants Village of South Holland, Williams, and Burke, are all residents of the State of Illinois, are employed in the State of Illinois, conduct business in the State of Illinois, and committed the acts described herein within the State of Illinois. As a result, the Court has personal jurisdiction over these Defendants pursuant to one or more subsections of 735 ILCS 5/2-209(a)-(c), in that the Defendants have, with respect to the present case, transacted business in the State of Illinois, engaged in the acts described herein within Illinois, and/or have contacts with the State of Illinois, all commensurate with the United States and Illinois Constitutions, so as to submit themselves to the jurisdiction and process of this Court.

8.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b), in that all defendants are citizens of Illinois, and the activities complained of herein all occurred in this judicial district.

## FACTS

9.     Mr. Bey is 78 years old. He has had the surname "Bey" his entire life, as did his father, who emigrated to the United States from Tunisia.

10.     Mr. Bey is familiar with people who call themselves "Moors," people who associate themselves with the Moorish Science Temple of America, an Islamic sect founded in

New Jersey in 1913. However, Mr. Bey himself is not a Moor. Others mistakenly believe he is a Moor because of his surname, as many followers of the Moorish Science Temple of America append to their surname the name "Bey."[1]

11.     Now retired, Mr. Bey volunteers his time as a motivational speaker with an organization he founded, the Creation and Conservation of Wealth Institute.  In this role, he travels around the United States speaking at seminars on a pro-bono basis, to inspire young people to better market themselves, or to create business ventures.

12.     While travelling around the country, Mr. Bey has the opportunity to meet a wide variety of people. Many of these people offer Mr. Bey a place to stay while he is in town, as they understand he does not receive compensation for his seminars.

13.     One of these men, Sabeel El-Bey, was known to Mr. Bey only as "Sabeel."  Mr. Bey understood that Sabeel had recently purchased a home in South Holland, Illinois, and had a tenant who lived in one of the rooms, Ms. Felicia Mohammad. Sabeel asked Mr. Bey to stay at his South Holland home, as he was expecting a delivery of furniture, and was scheduled to go out of town on a business trip. Ms. Mohammad worked at a nearby hair salon during the day, and was unable to remain at home to receive the furniture.

14.     Mr. Bey accepted Sabeel's offer to stay in Sabeel's South Holland home to await a delivery of furniture. On August 21, 2010 he met Sabeel, who gave him a garage door opener to let himself in and out of the home. Later that day, Mr. Bey drove his minivan to South Holland, and parked it in the driveway of 84 Woodland Drive, in plain sight, directly in front of the home.

---

[1] See Anjelica Tan and Susan Chandler, *Think You Own Your House? Check the Deed*, The New York Times, August 27, 2011, available at http://www.nytimes.com/2011/08/28/us/28cncmortgage.html?_r=1&pagewanted-all.

15.     On Sunday, August 22, 2010, the very next morning, Mr. Bey was awakened by a knock on the door at 8:30 a.m.  He opened the front door to find defendants Williams and Burke, officers from the South Holland police department, who demanded to know why he was there. Mr. Bey explained that he was asked to stay in the home by the homeowner, and gave the police officers Sabeel's telephone number, so they could call him to clear up their apparent misunderstanding.

16.     Instead, Williams and Burke handcuffed and arrested Mr. Bey and brought him to the police station. Williams and Burke did not explain why they were arresting Mr. Bey, or allow him to collect his belongings or medication, or to move his vehicle from the driveway. Officers Williams and Burke did not allow Mr. Bey to use the bathroom. A tow truck arrived and towed his minivan away. During the ride to the police station Mr. Bey overheard one of the officers say, "we have another one of them."

17.     Mr. Bey was arrested for trespassing, even though no one ever told him he was trespassing, and he believed to have permission to stay there from the homeowner.  He posted bond, and was released within an hour of arriving at the police station. The police department did not release to him any of his other belongings, including his car, medication, the rest of his clothes, and/or sleeping bag -- beyond the clothes on his back.

18.     Mr. Bey had to go to a hospital emergency room because he lacked access to his medication, and had to pay the subsequent hospital bill.

19.     Mr. Bey also had to purchase clothing, while his belongings were unlawfully seized by Defendants.

20.     Mr. Bey tried to retrieve his car from the tow lot, which refused to release his car and belongings, without authorization from the South Holland police department.

4

21.     Mr. Bey subsequently went to the South Holland police department on five different occasions to retrieve his car, speaking each time to unknown officers at the station. Even though he had his registration in his car and carries a valid Tennessee State drivers license, the South Holland police department demanded additional evidence that Mr. Bey owned his car before they would release it. On each trip to the station, the South Holland police requested new evidence that was not previously requested or identified by the South Holland police department on Mr. Bey's previous trips. Such evidence had to be retrieved from Tennessee, at considerable time and expense.

22.     On one trip to the South Holland police department, a lieutenant believed to be Dave Pedric admitted to Mr. Bey that his car should never have been towed, nor should he have been arrested, in the first place.

23.     While his car was detained, Mr. Bey had to rent a car, incurring yet additional expense.

24.     By on or about September 20, 2010, Mr. Bey had to seek relief from a Cook County judge in Markham, Illinois, to finally order his car to be released. Mr. Bey had to pay $1,475.00 in cash to retrieve his car; $515.00 went to the South Holland police department, and $960.00 was paid to the tow lot.

25.     Mr. Bey now understands that "Sabeel" did not own the house at 84 Woodland Drive, whose true owner at the time was one Adolph Clark. (Ex. A, May 11, 2012 Memorandum Opinion and Order, *Sabeel C. El-Bey v. Village of South Holland, et al.*, Civ. A. No. 11-cv-4949, D.I. 153 (Leinenweber, J.).) A deed in the name of the Moorish Science Temple Trust had been filed with the Cook County Recorder of Deeds in July, 2010, that claimed ownership of the property. Mr. Bey had no knowledge of either this transaction, or of the apparent conflicting

claims of ownership. Moreover, Plaintiff Julian T. Nettles-Bey was never warned that he was trespassing on the property.

26.     In addition to having no notice of any kind from either the police, Mr. Clark, or any other party that he was trespassing in Mr. Clark's home, Mr. Bey was never given any opportunity to remove his belongings from the home, or to remove his car from its driveway.

27.     On February 1, 2011, a criminal trial was held before Judge Turner of the Cook County Circuit Court, Sixth Municipal Division on the trespassing charge. Following the bench trial, the judge found Mr. Bey not guilty of trespassing, because there was absolutely no evidence that Mr. Bey had ever been given notice of any kind that he was trespassing on the property.

28.     Further, at the time of the arrest, no attempt had been undertaken by any of the Defendants to follow up on Mr. Bey's explanation of why he was in the house in the first place, which investigation would have readily revealed a recorded deed in the name of the Moorish Science Temple Trust, of which Sabeel El-Bey claims to be the Trustee.

## COUNT I – EQUAL PROTECTION CLAIM AGAINST
## DEFENDANTS WILLIAMS AND BURKE
## 42 U.S.C. § 1983

29.     Mr. Bey re-alleges paragraphs 1 through 28.

30.     On information and belief, Defendants Williams and Burke spoke with Mr. Adolph Clark on August 22, 2010, who claimed to be the homeowner of the same property, and who complained of trespassers.

31.     When Defendants Williams and Burke came to the home, Mr. Bey told the officers that he had permission to stay at the home from Sabeel, who he believed was the homeowner, and gave them Sabeel's phone number, so they could clear up this apparent confusion.

32.     On information and belief, Defendants did not check publicly available records, which would have revealed an unclear title to the home.

33.     Defendants Williams and Burke assumed, contrary to fact, that Mr. Bey, like Sabeel El-Bey and Felicia Mohammad, was a Muslim and/or that he was a member of the Moorish Science Temple, by virtue of his last name and/or his dark skin.

34.     Defendants Williams and Burke decided to arrest Mr. Bey, rather than asking him to vacate the property, because of his apparent Muslim faith, and/or his believed association with the Moorish Science Temple.

35.     Acting under the color of state law, and in violation of Mr. Bey's Fourteenth Amendment right to equal protection under the law, Defendants Williams and Burke treated Mr. Bey differently than other similarly-situated individuals on the basis of Mr. Bey's perceived affiliation with the Moorish Science Temple and/or the Muslim faith.

36.     At the time Defendants Williams and Burke arrested Mr. Bey, they each knew that it would be illegal and unconstitutional for either of them to selectively enforce the law on criminal trespass by arresting individuals with the last name of Bey, or based on an individual's perceived affiliation with the Moorish Science Temple and/or the Muslim faith.

37.     Defendants Williams and Burke's actions amounted to deliberate indifference to Mr. Bey's rights, in violation of the Fourteenth Amendment to the United States Constitution.

38.     Defendants William and Burke's conduct foreseeably, proximately and actually caused Mr. Bey to suffer damage, loss of savings and property, and damage to his health, in addition to mental and emotional distress, humiliation and embarrassment.

**COUNT II – EQUAL PROTECTION MONELL CLAIM AGAINST DEFENDANT VILLAGE OF SOUTH HOLLAND 42 U.S.C. § 1983**

39.     Mr. Bey re-alleges paragraphs 1 through 38.

40.     Defendant Village of South Holland trains its police force to identify men bearing the name of Bey, among others, to be Muslims and/or members of the Moorish Science Temple, and presumes such people are committing real estate fraud.

41.     Upon information and belief, Defendant Village of South Holland has singled out other individuals whose last name is Bey, or individuals who are believed to be Muslims and/or members of the Moorish Science Temple, and has trained its police force to arrest such people and charge them with trespassing, in contrast to other individuals not having those traits.

42.     Defendant Village of South Holland selectively enforces its trespassing laws against people whose last name is Bey, or people who are believed to be Muslims and/or members of the Moorish Science Temple.

8

43.    Defendant Village of South Holland facilitated the conduct complained of in this complaint, through their pre-hiring review, training, omissions, the disciplinary actions, or lack thereof, of its officers who interact with actual or apparent Muslims and/or those believed to be associated with the Moorish Science Temple.

44.    In so doing, Defendant Village of South Holland has singled out actual or apparent Muslims and/or members of the Moorish Science Temple as presumptive criminals, who may be unlawfully deprived of their constitutional rights.

45.    In so doing, Defendant Village of South Holland acted with deliberate indifference to Mr. Bey's constitutional rights, and deprived Mr. Bey of the equal protection of the laws, based on the mistaken belief that he is either a member of the Moorish Science Temple and/or a Muslim.

**PRAYER FOR RELIEF**

Plaintiff Julian T. Nettles-Bey prays for the following relief:

46.    That this Court find that Defendants Williams and Burke arrested Mr. Bey because of his perceived affiliation with the Muslim faith and/or with the Moorish Science Temple;

47.    That this Court find that the conduct of Defendants Williams and Burke amounts to deliberate indifference to Mr. Bey's constitutional rights in violation of the Fourteenth Amendment to the United States Constitution;

48.    That this Court find that Defendant Village of South Holland unlawfully trains its police officers to selectively enforce trespassing laws against people whose names end in "Bey,"

who appear to be Muslims and/or who are believed to be members of the Moorish Science Temple;

49.     That this Court find that the conduct of Defendant Village of South Holland amounts to deliberate indifference to Mr. Bey's constitutional rights in violation of the Fourteenth Amendment to the United States Constitution;

50.     That this Court award Mr. Bey damages to compensate him for all of the losses he has suffered at the hands of Defendants, and to also assess punitive damages, in order to punish Defendants for their behavior; and

51.     That this Court award reasonable attorney fees, taxable costs and such other and further relief to Mr. Bey as deemed just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues triable by jury.

Respectfully submitted,

Julian T. Nettles-Bey


Dated: July 14, 2015          By:     /s/Richard D. Harris
                                      Richard D. Harris, Reg. No. 1137913
                                      Barry R. Horwitz, Reg. No. 6296764
                                      GREENBERG TRAURIG, LLP
                                      77 West Wacker Drive, Suite 3100
                                      Chicago, Illinois 60601
                                      Telephone:  312-456-8400
                                      Facsimile:  312-456-8435

                                      Counsel for Plaintiff Julian T. Nettles-Bey
                                      by Court Appointment

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I electronically filed the foregoing SECOND AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.


Dated:  July 14, 2015                      /s/ Richard D. Harris_____